# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. 24 CV 935 |
| *ex rel.* [UNDER SEAL], | Hon. _____ |
| Plaintiff,<br><br>v.<br><br>[UNDER SEAL], | **QUI TAM COMPLAINT**<br><br>**FILED UNDER SEAL**<br>**UNDER 31 U.S.C. § 3730(b)(2)** |
| Defendants. | **JURY TRIAL DEMANDED** |

SWN\851147.1

UNITED STATES DISTRICT COURT FILED

SEP **3 0** 2024

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**2 4  C V  9 3 5**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Civil Action No.** _____ |
| *ex rel*. AIDAN FORSYTH, | **Hon.** _____ |
| Plaintiff/Relator, | **QUI TAM COMPLAINT** |
| v. | **FILED UNDER SEAL** |
| 3RD AVENUE TRANSIT, INC. and Y&M TRANSIT CORP., | **UNDER 31 U.S.C. § 3730(b)(2)** |
| Defendants. | **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"),

Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants 3rd

Avenue Transit Inc. ("3rd Avenue") and Y&M Transit Corp. ("Y&M"), (collectively,

"Defendants"), and alleges as follows:

**INTRODUCTION**

1.    This is an action to recover treble damages, civil penalties, and all other remedies

on behalf of the United States of America in connection with the Defendants' materially false and

fraudulent applications to the Government for loans under the Paycheck Protection Program

("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.    Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of

America, damages and civil penalties arising from false or fraudulent claims for payment that

Defendants submitted or caused to be submitted to the Federal Government-funded and/or

subsidized PPP loan programs.

1

SHM\951147.1

## SUMMARY OF ALLEGATIONS

3.     Soon after the COVID-19 pandemic started in March 2020, Congress enacted emergency financial assistance to affected businesses, authorizing the SBA to establish and fund guaranteed PPP loans.  The SBA ultimately authorized two phases of PPP loans: starting in April 2020, businesses could obtain "first-draw" loans, and, starting in January 2021, after Congress authorized additional funding, they could obtain "second-draw" loans.  Eligible businesses could later request and obtain forgiveness of PPP loans, including interest.

4.     As with all SBA programs, only businesses meeting the agency's definition of a "small business concern" were eligible, and the SBA imposed limitations which were stricter for second-draw borrowers.

5.     In evaluating a business's size, the SBA also considered whether it had "affiliates" subject to mutual equity ownership, overlapping management and/or control.

6.     For first-draw loans, among other things, a business could have no more than 500 employees. If it employed a larger number, it had to meet an alternative size standard of not more than $15 million in tangible net worth and not more than $5 million in average net income over the preceding two years.  However, this exception did not apply to second-draw loans, for which a business and its affiliates could have no more than 300 employees.

7.     Accordingly, PPP loan applications required a borrower's representative to state (among other things) the business's total number of employees (including employees of affiliates) and to disclose any common ownership or management with other businesses. The application also required the representative to acknowledge that the information submitted was material to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially

SHM\951147.1

false application would violate Federal law. PPP loan forgiveness applications required similar attestations of eligibility and certifications/acknowledgments.

8.      At all times relevant to this action, Defendants 3rd Avenue and Y&M were affiliated with one another, as well as with non-defendant Jofaz Transportation, Inc. ("Jofaz") as a result of their common ownership and control.[1]

9.      Founded in 1993, 3rd Avenue was a school bus operator headquartered in Brooklyn, New York.  3rd Avenue has historically contracted with the New York City Department of Education and provided bus services to public school children in the Bronx.

10.     Founded in 2011, Y&M was a school transportation business headquartered in Brooklyn, New York.  Y&M has historically contracted with the New York City Department of Education.  It operated small school buses, vans, and mini-wagons, providing transportation to public school children in Brooklyn.

11.     Founded in 1978, Jofaz was a school transportation business headquartered in Brooklyn, New York. Jofaz has historically contracted with the New York City Department of Education and provided transportation to public school children throughout the five boroughs of New York City.

12.     The Jofaz Entities had the same headquarters (1 Coffey Street, Brooklyn, NY 11231) and operate three bus yards in Brooklyn.  They shared the same management team, and also shared mechanics, maintenance workers, dispatchers and administrative staff.  Joseph Fazzia Jr. was the Owner, President, and/or Chief Executive Officer of the Jofaz Entities.

13.     According to 3rd Avenue and Y&M's second draw PPP loan applications, they had 42 and 288 employees, respectively, and according to Jofaz's first draw loan application, it

---

[1] Defendants and Jofaz are referred to collectively herein as the "Jofaz Entities."

SHM\951147.1

employed 500 people. Because the Jofaz Entities together exceeded the SBA's 300-employee limit, neither Defendant was eligible to receive second-draw PPP loans or forgiveness thereof.

14.     Defendants received their second-draw loans through Manufacturers and Traders Trust Company (based in Buffalo, New York) and Ridgewood Savings Bank (based in Queens, New York).

15.     The loan application required the applicant's designated representative to certify that the business was an eligible borrower under SBA rules. The application also required the representative to acknowledge that the information submitted to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially false application would violate Federal Law.

16.     Upon information and belief, in an effort to circumvent the 300-employee cap, each Defendant's representative falsely and fraudulently certified that the applicant business was an eligible borrower under SBA rules, that it had no affiliated business, and that the applicant, in the aggregate with any affiliated businesses, employed no more 300 persons. They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

17.     In reliance upon the Defendants' false statements and certifications, the lenders extended second-draw PPP loans to them totaling approximately $2.4 million.

18.     In or about April and May 2022, Defendants applied for and obtained forgiveness of their second-draw PPP loans.

19.     The PPP Loan Forgiveness Application Form required the applicant's representative to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA

4

through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material aspects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

20.     Upon information and belief, the Defendants' representatives falsely and fraudulently certified that the businesses had complied with the SBA's PPP loan requirements and were therefore entitled to loan forgiveness.

21.     Had Defendants been truthful in their statements and certifications to the banks, i.e. that 3rd Avenue and Y&M were affiliated and had more than 300 employees in total, the second draw PPP loan would never have been issued and/or forgiven.

22.     Relator files this qui tam lawsuit to enable the Government to recover from Defendants the approximately $2.4 million in SBA-guaranteed loans (plus associated fees and interest) that were issued to Defendants, and later forgiven, as the intended result of their wrongdoing, as well as to recover treble damages and/or penalties.

### JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

23.     This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by or on behalf of the United States of America.

24.     In addition, the FCA specifically confers jurisdiction upon the United States District

SHN\951147.1

Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction pursuant to 31 U.S.C. § 3732(a) because one or more Defendants submitted false and fraudulent PPP loan applications and/or requests for loan forgiveness to a lender in this District.

25.     Venue is proper in this District under 31 U.S.C. § 3732(a) because certain wrongdoing alleged herein took place within this and/or affected this District.

26.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed *in camera* and will remain under seal for a period of at least 60 days, and shall not be served on Defendants until the Court so orders.

27.     Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in its possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by contemporaneously serving copies of the Complaint and such disclosure upon the Honorable Trini A. Ross, United States Attorney for the Western District of New York, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

28.     Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, the Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since it has voluntarily provided its material information to the Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES/RELATED ENTITIES

29.     At all times relevant to this action, Plaintiff/Relator Aidan Forsyth resided at 55 West 8th Street, New York, NY 10011.

SHM\951147.1

30.    At all times relevant to this action, Defendant 3rd Avenue Transit, Inc. was a limited liability company formed in the State of New York on or about February 22, 1003. Its principal place of business was located at 1 Coffey Street, Brooklyn, NY 11231.

31.    Defendant Y&M Transit Corp. was a corporation incorporated in the State of New York on or about December 15, 2011. Its principal place of business was located at 1 Coffey Street, Brooklyn, NY 11231.

32.    Non-Defendant Jofaz Transportation, Inc. was a corporation incorporated in the State of New York on or about September 15, 1978. Its principal place of business was located at 1 Coffey Street, Brooklyn, NY 11231.

33.    According to New York State corporate records, Joseph A. Fazzia, Jr.[2] was the Chief Executive Officer and an owner of 3rd Avenue. He was the Chief Executive Officer of Y&M. He was the Chief Executive Officer and an owner of Jofaz. Angelo C. Fazzia and Toni Ann Fazzia were each listed as an Officer and owner of 3rd Avenue.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

34.    Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

---

[2] Joseph A. Fazzia founded Jofaz and Joseph A. Fazzia, Jr. was his son. In or about April 2008, Fazzia, Sr. resolved federal bribery charges against him by relinquishing his ownership interest in Jofaz and entering Jofaz into a monitoring agreement, which has since terminated. *See also* G. Smith, *FBI Claims School Bus Owner Paid Mob Union*, Daily News, Jan. 23, 2008.

SHM\951147 1

35.    The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G).  Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024).

36.    The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).  The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

37.    The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other

8

recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

38.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

39.     In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

### The CARES Act Authorizes Paycheck Protection Program Loans

40.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

41.     Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the

PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

42.    Under the PPP, eligible businesses could initially obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

43.    The SBA used size standards to determine if a business was a "small business concern" and therefore eligible to apply for an SBA-guaranteed PPP loan. To be deemed eligible, a business had to have fewer than 500 employees or meet the SBA industry size standard, if more than 500. The Small Business Jobs Act of 2010, Section 1116 established an alternative size standard of not more than $15 million in tangible net worth and of not more than $5 million in the average net income after federal income taxes (excluding any carry-over losses) of the applicant for the two full fiscal years before the date of the application.

44.    The SBA considered whether a business had "affiliates" subject to mutual equity/stock ownership, overlapping management and/or control. *See* 86 Fed. Reg. 3712, 3715-16 Subpart A, § 121.103 (January 14, 2021). Businesses which are "affiliates" of each other under the SBA's definitions "may be treated as one party with such interests aggregated," including aggregating the businesses' annual receipts and number of employees. See id. §§ 121.103, 121.104, & 121.106. For purposes of the size standard, the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher. 13 C.F.R. § 121.301.

45.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans.  To obtain a PPP loan, a qualifying business (through its authorized representative)

SHM\951147.1

signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

46.     Specifically with regard to these eligibility criteria, the loan application asked, "Is the Applicant or any owner[3] of the Applicant an owner of any other business, or have common management with, any other business?" If the answer was yes, the applicant was required to "list all such businesses and describe the relationship on a separate sheet[.]"

47.     In December 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Economic Aid Act) was enacted, authorizing the SBA to guarantee "Paycheck Protection Program Second Draw Loans . . . under generally the same terms and conditions available under the Paycheck Protection Program[.]" *See* 86 Fed. Reg. 3712-3723 (Jan. 14, 2021).

48.     The second-draw PPP loan application (SBA Form 2483-SD) required the borrower's authorized representative to state the total number of employees "(including affiliates, if applicable; may not exceed 300 unless 'per location' exception applies)," and to indicate if "the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business" and if so, to "list all such businesses and describe the relationship on a separate sheet[.]"

49.     The borrower's authorized representative was required to certify, among other things, that:

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business

---

[3] Defined by the SBA as an individual with a 20% or greater equity interest in the business.

Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees or (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

* * *

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. . . .

50.    Besides the total number of employees, the borrower's authorized representative was also required to certify, among other things, the business's average monthly payroll expenses. This information was used to calculate the amount of money the business was eligible to be loaned. The applicant also had to submit documentation showing payroll expenses, among other things.

51.    PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the

total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan.  SBA paid processing fees to lenders.

52.     Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application.  If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

53.     A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

54.     The applicant's authorized representative was finally required to acknowledge and certify in good faith by initialing the following certification:

> that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

SHM\951147.1

## SPECIFIC FRAUD ALLEGATIONS

### Defendants in the Aggregate were Too
### Large to be Eligible for PPP Loans

55.     In the aggregate, the Defendants, being affiliates of one another and of Jofaz, were too large in their total number of employees to qualify under SBA rules as "small business concerns" eligible to receive second-draw PPP loans and forgiveness of those loans.

56.     Defendants together reported 330 employees in their second-draw loan applications, exceeding the 300-employee limit.  If Jofaz's employees had been included and reported, the number would likely have exceeded 1,000, given that the Jofaz Entities had together reported 1,032 employees in applying for their first-draw PPP loans (Jofaz had reported having 500 employees and Y&M had reported having 498 employees).

### Defendants were Affiliates of Each Other and of Jofaz
### at the Time They Applied for Second-Draw Loans

57.     As previously alleged, Defendants and Jofaz were all commonly owned and controlled by Joseph A. Fazzia, Jr.

58.     New York City records showed Defendants and Jofaz [YELLOW BUS] as affiliated "Related Entities" defined as "An entity in which the parent of the enrolling vendor either owns more than fifty (50) percent of the voting stock and/or an entity in which a group of principal owners or officers that owns more than fifty (50) percent of the enrolling vendor also owns more than fifty (50) percent of that entity's voting stock."

59.     A Complaint filed by the Attorney General of New York against the Jofaz Entities in or about 2022 (alleging environmental offenses occurring in late 2019) alleged, among other things, that they shared the same headquarters (1 Coffey Street, Brooklyn, NY 11231) and operated three bus yards in Brooklyn.  Complaint, *People v. Jofaz Transportation, Inc., 3rd Avenue Transit,*

14

*Inc. and Y&M Transit Corp.*, Index No. 513922-2022 (N.Y. Supreme, Kings County) The Complaint further alleged that the Jofaz Entities shared the same management team, and also shared mechanics, maintenance workers, dispatchers and administrative staff.

60.    Accordingly, at all times relevant to this action, Defendants and Jofaz were affiliated entities and part of the same corporate group under SBA regulations governing PPP Loan eligibility.

## PPP LOANS TO INELIGIBLE BORROWERS

### Despite Exceeding SBA's Aggregate Size Limit, 3rd Avenue Applied for and Received a Second-Draw PPP Loan, which was Later Forgiven

61.    In or about January 2021, an authorized representative of 3rd Avenue prepared or caused to be prepared an SBA application for a second draw PPP loan on behalf of 3rd Avenue to Manufacturers and Traders Trust Company (a/k/a M&T Bank Corporation) ("M&T Bank"), a federally-insured financial institution based in Buffalo, New York.

62.    Upon information and belief, an authorized representative of 3rd Avenue prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that 3rd Avenue was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the Jofaz Entities had over 1,000 employees in the aggregate.

63.    The authorized representative falsely certified that 3rd Avenue, together with its affiliates, "employs no more than 300 employees."

64.    3rd Avenue reported that it had 42 employees, whereas Y&M reported 298 employees. In total, the affiliates had 342 employees. As previously alleged, in applying for their first-draw PPP loans within the previous year, Jofaz had reported having 500 employees and Y&M had reported having 498 employees.

65.     The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

66.     Upon information and belief, 3rd Avenue applied for a second draw PPP loan despite exceeding the SBA's 300-employee aggregate limit.

67.     Upon information and belief, an authorized representative of 3rd Avenue falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

68.     In or around January 2021, an authorized representative submitted or caused to be submitted 3rd Avenue's second draw PPP loan application to M&T Bank.

69.     On or about January 22, 2021, in reliance on 3rd Avenue's materially false and fraudulent representations and certifications in the loan application, M&T Bank issued a second-draw PPP loan # 4109398309 ("3rd Avenue Loan 8309") to 3rd Avenue in the amount of $402,800.00.

70.     The PPP Loan Forgiveness Application Form required the applicants' authorized representatives to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material respects" and to

SHM\951147.1

acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

71.     In or about April 2022, 3rd Avenue submitted an SBA Form 3508 seeking forgiveness of the 3rd Avenue Loan 8309.

72.     Upon information and belief, 3rd Avenue's authorized representative falsely and fraudulently certified that the business had all complied with the SBA's second-draw PPP loan requirements and was therefore entitled to loan forgiveness.

73.     On or about May 10, 2022, in reliance on 3rd Avenue's material false representations and omissions, the 3rd Avenue Loan 8309 was forgiven in full, causing the United States to reimburse M&T Bank for the full amount, which cost the Government at least $407,931.56.

### Despite Exceeding SBA's Aggregate Size Limit, Y&M Applied for and Received a Second-Draw PPP Loan, which was Later Forgiven

74.     In or about March 2021, an authorized representative of Y&M prepared or caused to be prepared an SBA application for a second draw PPP loan on behalf of Y&M to Ridgewood Savings Bank, a federally-insured financial institution based in Queens, New York.

75.     Upon information and belief, an authorized representative of Y&M prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Y&M was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Y&M was a business that had more than 300 employees.

76.     The authorized representative falsely certified that Y&M, together with its affiliates, "employs no more than 300 employees."

77.     Y&M reported that it had 298 employees, whereas 3rd Avenue reported 42 employees. In total, the affiliates had 342 employees. As previously alleged, in applying for their

17

first-draw PPP loans within the previous year, Jofaz had reported having 500 employees and Y&M had reported having 498 employees.[4]

78.    The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

79.    Upon information and belief, Y&M applied for a second-draw PPP loan despite exceeding the SBA's 300-employee aggregate limit.

80.    Upon information and belief, an authorized representative of Y&M falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

81.    In or around March 2021, an authorized representative submitted or caused to be submitted Y&M's second draw PPP loan application to Ridgewood Savings Bank.

82.    On or about April 8, 2021, in reliance on Y&M's materially false and fraudulent representations and certifications in the loan application, Ridgewood Savings Bank issued a second draw PPP loan # 9398928703  ("Y&M Loan 8703") to Y&M in the amount of $2 million.

83.    The PPP Loan Forgiveness Application Form required the applicants' authorized representatives to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA

---

[4] Notably, Jofaz had obtained its first-draw loan from Ridgewood Savings Bank, and 3rd Avenue and Y&M had obtained theirs from M&T Bank.  Jofaz apparently did not apply for a second-draw loan.

SHM\851147.1

through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material respects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

84.     In or about April 2022, Y&M submitted an SBA Form 3508 seeking forgiveness of the Y&M Loan 8703.

85.     Upon information and belief, Y&M's authorized representative falsely and fraudulently certified that the business had all complied with the SBA's second-draw PPP loan requirements and was therefore entitled to loan forgiveness

86.     On or about April 13, 2022, in reliance on Y&M's material false representations and omissions, the Y&M Loan 8703 was forgiven in full, causing the United States to reimburse Capital One for the full amount, which cost the Government at least $2,020,166.67.

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

87.     Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $2.5 million. [$2.428,098.23 + 32,084.00 fees]

SHN\851147.1

## CLAIMS FOR RELIEF

### COUNT 1

**False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)**

88.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

89.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

90.    As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

### COUNT II

**False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)**

91.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

92.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

93.    As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

SHM\851147.1

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A.     That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.     That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 and up to $27,894.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.     That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.     That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.     That Relator be granted such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.


DATED: September 30, 2024

SPIRO HARRISON & NELSON


David B. Harrison
Eric H. Jaso (*pro hac vice* pending)
363 Bloomfield Avenue
Suite 2C
Montclair, NJ 07042
(973) 744-2100
dharrison@shnlegal.com
ejaso@shnlegal.com

*Attorney for Relator*

22

SHN\851147.1

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

24 CV 935

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America ex rel. Aidan Forsyth

## DEFENDANTS
3rd Avenue Transit, Inc. and Y&M Transit Corp.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Kings County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David B. Harrison, Esq. Spiro Harrison & Nelson 363 Bloomfield Ave., Suite 2C, Montclair, NJ 07042; 973-744-2100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☒ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☒ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. Sec. 3729
Brief description of cause:
Qui Tam lawsuit alleging fraud in obtaining SBA Payroll Protection Program

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
09/30/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____